**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:15-cr-00238-SI |
| v. | **OPINION AND ORDER** |
| **DIANA YATES**, | |
| Defendant. | |

Billy J. Williams, Interim United States Attorney; Claire M. Fay and Michelle Holman Kerin, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204.

Janet Lee Hoffman and Sara F. Werboff, JANET HOFFMAN & ASSOCIATES LLC, 1000 S.W. Broadway, Suite 1500, Portland OR 97205. Of Attorneys for Defendant Diana Yates.

G. Kevin Kiely, Casey M. Nokes, and Nicole M. Swift, CABLE HUSTON LLP, 1001 S.W. Fifth Avenue, Suite 2000, Portland OR 97204. Of Attorneys for The Bank of Oswego.

**Michael H. Simon, District Judge.**

Defendant Diana Yates ("Yates") is charged with conspiracy to commit bank fraud and making false bank entries, reports, and transactions during the time that she was affiliated with The Bank of Oswego (the "Bank"). Before the Court is Yates's motion to compel the Bank—her former employer, who is not a party to this criminal action—to advance the legal expenses Yates incurs in defending against the charges in this case. Yates argues that she has a contractual right

to advancement of her legal expenses under the Bank's Articles of Incorporation and Oregon law. The Government filed a limited opposition to Yates's motion, arguing that the Court has no jurisdiction to rule on the merits of that motion.[1] The Bank joined the Government's limited opposition and filed a memorandum further opposing Yates's request that the Court exercise ancillary jurisdiction in this criminal action over her breach of contract claims against the Bank. For the reasons that follow, the Court holds that it does not have jurisdiction over Yates's civil claims against the Bank in this criminal case and thus denies her motion to compel the Bank to advance legal fees. Dkt. 46.

## BACKGROUND

From 2004 through March 2012, Yates was the Executive Vice President, Chief Financial Officer, and co-founder of the Bank. Yates was also Secretary of the Bank's Board of Directors. On June 26, 2015, Yates and Dan Heine ("Heine")[2] were indicted in this criminal action for conspiracy to commit bank fraud and making false bank entries, reports, and transactions during the time that Heine and Yates were affiliated with the Bank. Although they are co-defendants,

---

[1] Yates responds that the Government's opposition to her motion is inappropriate interference with her constitutional right to counsel of her choice. Yates cites *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), in support of this argument. In *Stein*, the government appealed from an order dismissing an indictment against thirteen former partners and employees of an accounting firm. *Id.* at 135. The district court had found that, absent pressure from the government stemming from a policy in which a firm's voluntary payment of its agents' legal expenses was a factor favoring prosecution of the firm, the accounting firm would have paid the defendants' legal expenses incurred in defending against the charges. *Id.* at 135-36. The Second Circuit affirmed, holding that the government interfered with the defendants' relationship with their counsel as well as their ability to mount a defense, in violation of the Sixth Amendment. *Id.* at 136. Here, the government's jurisdictional objection to Yates's motion is not analogous to the government's policy in *Stein*. Moreover, the present dispute properly may be resolved without consideration of the government's limited opposition concerning the jurisdictional matter, and the Court considers only the Bank's memorandum opposing Yates's motion on jurisdictional grounds.

[2] From 2004 through September 2014, Heine was the President, Chief Executive Officer, co-founder, and a member of the Board of Directors of the Bank.

Heine and Yates have interests that are adverse in this case. The criminal trial against Heine and Yates is scheduled to begin on November 1, 2016.

On August 31, 2015, Yates requested that the Bank advance the legal expenses she incurs in defending against the criminal charges in this matter pursuant to the Bank's indemnification obligations in its Articles of Incorporation and Oregon law. In support of her request, Yates provided the Bank with an affirmation of good faith and an undertaking to repay any expenses advanced if it is ultimately determined that she is not entitled to indemnification. On October 7, 2015, the Bank, through a Board resolution, determined that Yates was not entitled to indemnification under the Articles of Incorporation because "the Board cannot conclude that Ms. Yates acted in good faith and in a manner she believed to be in the best interest of the Bank." Dkt. 47 at 31 (quotation marks omitted). Accordingly, the Board denied Yates's request for advancement.

The Bank previously had denied a similar request by Yates in December 2013 to advance expenses Yates incurred in defending against an FDIC investigation. The Bank reasoned "that it does not have the authority under the Articles of Incorporation to provide Ms. Yates with an advancement." Dkt. 82 at 9. Later that month, Yates requested that the Bank reconsider its decision, arguing that Yates is "a person indemnified hereunder," as that phrase is used in the advancement provision of the Bank's Articles of Incorporation. Dkt. 82 at 10. Neither party has presented evidence that the Bank reconsidered its December 2013 denial.

On August 26, 2015, Heine filed a civil action against the Bank, asserting that under the Bank's Articles of Incorporation and Oregon law, he was entitled to advancement of his legal expenses incurred in defending against the pending criminal charges. *Heine v. The Bank of*

*Oswego*, Case No. 3:15-cv-01622-SI (D. Or.).[3] Heine argued that the federal court had diversity jurisdiction over his civil action under 28 U.S.C. § 1332. Because there is incomplete diversity between Yates and the Bank, however, the federal court would have lacked supplemental jurisdiction if Yates had sought to intervene in Heine's action against the Bank as a co-plaintiff under Fed. R. Civ. P. 24. *See* 28 U.S.C. § 1367(b). On October 14, 2015, Yates filed in this criminal action her present motion to compel the Bank to advance her legal expenses, asserting a contractual claim to advancement that is substantively identical to Heine's claim.

On November 13, 2015, this Court issued an Opinion and Order setting forth its Findings of Fact and Conclusions of Law following a bench trial on Heine's claims. *Heine v. The Bank of Oswego*, 2015 WL 7069661 (D. Or. Nov. 13, 2015). The Court held that Heine was entitled to advancement of reasonable legal expenses incurred in defending against the criminal charges, and the Court issued a declaratory judgment in favor of Heine stating that the Bank was obligated to advance his defense expenses. *Id.* at *16. The Court entered Judgment in favor of Heine on December 29, 2015. Case No. 3:15-cv-01622-SI, Dkt. 81. Although Yates had some participatory rights in that proceeding, she was not a party and thus the Court's Judgment did not directly resolve her claims against the Bank. In light of the Court's Opinion and Order regarding Heine, Yates renewed her previous demand against the Bank for advancement, which the Bank again denied.

Yates is currently receiving payment of her legal expenses incurred in defending against the criminal charges in this case through the Bank's Directors and Officers liability insurance coverage. That insurance policy has a three million dollar limit, to be shared among all "insured persons," which includes former officers such as Yates and Heine. The Bank is a Named Insured

---

[3] That case also was assigned to the undersigned U.S. District Judge.

and has the right to seek reimbursement under the insurance policy for expenses it advances to "insured persons," including Heine. No apportionment of the available insurance funds has yet been made.

## DISCUSSION

Yates argues that under the indemnification section of the Bank's Articles of Incorporation, she is entitled to advancement of legal expenses incurred in defending this criminal action, provided that she sign both an affirmation of good faith and an undertaking to repay the expenses if it is ultimately determined that she is not entitled to indemnification. Yates signed those documents and now requests that the Court exercise its ancillary jurisdiction and enter an order compelling the Bank to advance her legal expenses incurred in defending against the criminal charges in this case. Yates additionally requests that the Court enter an order granting Yates her attorney's fees incurred in pursuing her asserted right of advancement. The Court begins by addressing the threshold question of whether it properly may exercise jurisdiction over Yates's contract claim against the Bank.

Federal courts are courts of limited jurisdiction and are presumed to lack jurisdiction over a case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting jurisdiction has the burden of overcoming this presumption. *Id.* The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378; *see also Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991) ("'Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice.'") (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)).

"The boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity." *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006). The Supreme Court has provided some guidance, instructing that a court may assert ancillary jurisdiction for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380 (citations omitted).

Courts commonly exercise ancillary jurisdiction when presented with a fee dispute between a client and his or her attorney arising from litigation pending before those courts. *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007); *see also Curry*, 941 F.2d at 731 ("Courts have long recognized that fee disputes arising from litigation pending before a district court fall within that court's ancillary jurisdiction."). In *Curry v. Del Priore*, the Ninth Circuit held that a district court appropriately exercised ancillary jurisdiction over a fee dispute between a plaintiff and his attorney in a civil case under Title VII of the Civil Rights Act of 1964. 941 F.2d at 732. The court reasoned that "[t]he district court's inherent authority to regulate members of its own bar" supported the exercise of ancillary jurisdiction. *Id.*

On occasion, courts have also exercised ancillary jurisdiction over fee disputes between a client and his or her attorney arising in criminal proceedings. *See* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.2 (3d ed. 2015) ("[A]ncillary jurisdiction can be exercised over fee disputes from a criminal case."). Such disputes, however, almost always are between a party to the proceeding and his or her counsel during all or part of the proceeding. For example, in *Garcia v. Teitler*, the Second Circuit upheld a district court's exercise of ancillary jurisdiction over a fee dispute between defendants and their former attorney

who withdrew as counsel after a *Curcio* hearing.[4] 443 F.3d at 208-10. The Second Circuit explained that the fee dispute was properly related to the criminal proceeding, as the *Curcio* hearing was "itself ancillary to the underlying criminal action." *Id.* at 209. Thus, the Second Circuit rejected the attorney's attempt to distinguish civil cases in which courts exercised ancillary jurisdiction to resolve a fee dispute between attorneys and their clients. *Id.*

In contrast to these cases, Yates does not ask the Court to adjudicate a fee dispute between herself and her attorney that arose during the course of this proceeding; rather, Yates asks the Court to adjudicate a dispute between herself and her former employer who would not otherwise be before the Court as a party in this criminal action. Yates does not provide the Court with any binding authority that would support its exercise of ancillary jurisdiction over this matter, nor is the Court aware of any. Instead, Yates relies upon an unpublished decision from the Southern District of New York, *United States v. Weissman*, 1997 WL 334966 (S.D.N.Y. June 16, 1997), in arguing that the exercise of ancillary jurisdiction would be proper here.

In *Weissman*, the defendant's former employer notified him that it would no longer advance his legal expenses after he was convicted of perjury and obstruction of justice. *Id.* at *1. The defendant moved the court to compel his former employer to continue paying his costs. *Id.* at *1. Because the defendant and his former were not diverse, the federal court had no independent jurisdictional basis for deciding the motion. *Id.* at *3. The court noted that it could find no cases in the criminal context that would provide guidance on the issue and thus "look[ed] to analogous situations in the civil context to determine if the exercise of ancillary jurisdiction is

---

[4] At a *Curcio* hearing, a trial court determines whether a defendant's waiver of his right to conflict-free counsel is knowing and intelligent. *See United States v. Curcio*, 680 F.2d 881, 888-91 (2d Cir. 1982).

proper." *Id.* at *5. The court found that those civil cases mandated the consideration of the following factors:

> the convenience of the parties, judicial economy, the court's familiarity with the underlying subject matter, . . . the court's need to protect its officers. . . . [and] whether the exercise of jurisdiction is necessary to provide a fair resolution of the underlying matter, and to allow the court to administer its proceedings.

*Id.* at *6.

The *Weissman* court reasoned that exercising ancillary jurisdiction over the defendant's expense advancement dispute was "generally necessary to permit proper administration of this case, and to assist in reaching a just resolution of the underlying proceeding." *Id.* The court noted that if it declined to exercise ancillary jurisdiction, the court would either have to stay the criminal proceedings until the issues were resolved in state court or permit post-trial motions and sentencing to proceed in the absence of any resolution, resulting in "a *de facto* denial of Weissman's application." *Id.* at *7. The court held that it had the discretion properly to exercise ancillary jurisdiction over the plaintiff's claim against his former employer. *Id.* at *9.

The Court does not find *Weissman* to be persuasive here.[5] First, *Weissman*'s reliance on civil cases for guidance regarding ancillary jurisdiction in a criminal proceeding may be misplaced. *See United States v. Polishan*, 19 F. Supp. 2d 327, 333 (M.D. Penn. 1998)

---

[5] In *Garcia*, the Second Circuit cited *Weissman* in support of the following assertion:

> In order to guarantee a defendant's right to choose his own counsel where, as here, his criminal case is ongoing, and to avoid the possibility of defendants becoming indigent and requiring the appointment of counsel, a district court must be able to exercise ancillary jurisdiction to resolve a fee dispute.

443 F.3d at 209-10. The Second Circuit in *Garcia*, however, considered the common exercise of ancillary jurisdiction over a fee dispute between criminal defendants and their former attorney in the criminal proceeding. Thus, *Weissman*'s holding was not directly applicable to that case. No courts in this Circuit have ever relied upon or cited to *Weissman*.

PAGE 8 – OPINION AND ORDER

("[*Weissman*'s] resort to *civil* cases for purposes of delineating the contours of ancillary jurisdiction in a criminal case is unsound. . . . [In a criminal case,] there is no room for cross claims, counterclaims, third party action, or wide-ranging discovery. Criminal procedure bears little resemblance to civil procedure.") (emphasis in original).

Second, in *Weissman* the dispute over advancement of legal expenses arose post-conviction and pre-sentencing, "at a time when no disposition of the issue could be reasonably obtained in another forum." *Stein*, 486 F.3d at 761 n.2. In this case, however, the Bank first denied Yates's request for advancement of expenses under the Articles of Incorporation in December 2013. In Yates's current motion, she argues that her right to advancement under the Articles of Incorporation is similar to the right she asserted in December 2013. *Compare* Dkt. 47 at 11-15 (Yates's motion to compel) *with* Dkt. 82 at 10-13 (Yates's December 26, 2013 letter to the Bank). Thus, Yates could have brought breach of contract claims against the Bank in state court nearly two years ago. *See also United States v. Wittig*, 512 F. Supp. 2d 1186, 1192 (D. Kan. 2007) ("Unlike the situation in *Weissman*, the fee advancement issue has been . . . before the courts in a civil context for almost two years; it did not suddenly arise in an awkward period in the case.") (quotation marks omitted). Alternatively, Yates could have commenced a civil action alleging breach of contract against the Bank shortly after she was indicted in late June of 2015. In fact, Yates may still pursue her civil claims in state court. Trial is set to begin in this case on November 1, 2016, approximately 11 months from now (Dkt. 69), and Yates is currently having her legal expenses paid under the Bank's Directors and Officers liability insurance coverage. Yates provides no reason why she cannot now file a civil action in state court against the Bank

and continue to draw from the Bank's insurance policy while her civil contract claims are being litigated in another forum.[6]

Additionally, the Second Circuit addressed similar issues in *Stein v. KPMG, LLP*, and issued a writ of mandamus against the district court, vacating that court's order asserting ancillary jurisdiction over a state law contract claim between criminal defendants and their employer who refused to pay their legal expenses. *Id.* at 755-56. The defendants had argued before the district court that their employer denied payment of legal expenses due to pressure from government prosecutors. *Id.* at 756. The district court found that the government had used the threat of prosecution to force the employer to stop payment, and thus violated defendants' constitutional rights to a fair trial and effective assistance of counsel. *Id.* The district court suggested that the constitutional violations may be made harmless if the defendants could force their employer to pay their legal expenses; based on that reasoning, the district court in a criminal action exercised ancillary jurisdiction over the defendant's contract claims against a non-party. *Id.* at 757.

---

[6] The Court notes that Oregon courts may apply offensive, nonmutual issue preclusion in appropriate cases. *See Friends of Yamhill Cnty. v. Bd. of Comm'rs of Yamhill Cnty.*, 351 Or. 219, 252 n.25 (2011). In offensive, nonmutual issue preclusion, a court may give preclusive effect in a later action to an earlier decision in favor of a non-party against a party in the later action who also was a party in the prior action. *See State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 275 Or. 97, 103 (1976). Issue preclusion (also known as collateral estoppel) may apply when "'a claim is litigated to final judgment.'" *Roth v. Garner*, 157 Or. App. 400, 404 (1998) (quoting *N. Clackamas Sch. Dist. v. White*, 305 Or. 48, 53, *mod.* 305 Or. 468 (1988)). Additionally, "under Oregon law the mere pendency of an appeal does not affect the preclusive effect of a prior judgment." *Sherwood v. Oregon Dep't of Transp.*, 170 Or. App. 66, 73 n.7 (2000) (quotation marks omitted). This federal court has already issued an Opinion and Order and final Judgment on exactly the relevant contract issue with regard to Yates's co-defendant, Heine, under precisely the same Articles of Incorporation. *Heine v. The Bank of Oswego*, Case No. 3:15-cv-01622-SI (D. Or.), Dkt. 70 (November 13, 2015 Opinion and Order), Dkt. 81 (December 29, 2015 Judgment). Thus, Yates could file a civil case against the Bank in state court and promptly move for summary judgment, arguing offensive, nonmutual issue preclusion. Yates does not indicate how long it would take to litigate her claims in civil court if she takes this path.

In granting the writ of mandamus against the district court, the Second Circuit noted that courts not infrequently exercise ancillary jurisdiction to resolve fee disputes between a party and his or her attorney during all or part of the litigation. *Id.* at 760. The court distinguished such cases, however, from the issue before it:

> Exercise of ancillary jurisdiction over a fee dispute between a party and an attorney functioning as an officer of the court in litigation over which a court has jurisdiction is, however, a world away from the exercise of ancillary jurisdiction in a criminal proceeding to adjudicate a contract dispute between the defendants *and a non-party former employer*.

*Id.* (emphasis added). In the latter case, "the need for the ancillary proceeding and the efficiencies provided by it must be both sufficiently great to outweigh the prejudice to the non-party and to be consistent with the limited jurisdiction of federal courts." *Id.* The court stated that "the requisite compelling circumstances will be rare, as the need for such a proceeding generally will be far less pressing than in cases involving parties already before the court." *Id.*

The Second Circuit in *Stein* concluded that the ancillary proceeding's "contribution to the efficient conclusion of the criminal proceeding [was] entirely speculative," as it may not render any constitutional violation harmless even if the employer were to lose. *Id.* at 762-63. The court also found that the employer would be prejudiced by being required to litigate breach of contract claims in a proceeding ancillary to a criminal prosecution. *Id.* at 761. Finally, the court noted that "a proceeding ancillary to a criminal prosecution was not necessary either to avoid perceived deficiencies in ordinary civil contract actions to enforce the alleged advancement contracts or to remove some barrier to the appellees' bringing of such actions." *Id.* at 763.

Yates argues that this case presents "compelling circumstances" that support ancillary jurisdiction for three reasons. First, Yates argues that unlike *Stein*, here the non-party to the criminal action has already litigated an identical issue before the same federal court and that the

court thus has familiarity with the legal and factual background underlying her fee dispute with the Bank. Second, Yates argues that this Court's resolution of her fee dispute affects the criminal case directly, as it relates to Yates's ability to fund her defense as well as her constitutional right to counsel of choice. Thus, Yates distinguishes *Stein*, in which the need for the ancillary proceeding was speculative. Third, Yates argues that the Bank would not be prejudiced by participation in an ancillary proceeding because the legal issue disputed in her present motion already has been decided by this Court against the Bank in its dispute with Heine.

The Court acknowledges that exercising ancillary jurisdiction over Yates's dispute with the Bank could promote judicial efficiency, as Yates's legal claim to advancement mirrors Heine's, which the Court has already resolved.[7] Yates's need for an ancillary proceeding, however, appears to be speculative. Yates is currently receiving reimbursement for her attorney's fees from the Bank's Directors and Officers liability insurance coverage, which has a three million dollar limit. Although Yates asserts that the insurance funds are at risk of depletion, thereby jeopardizing her right to counsel of choice, Yates has not presented any evidence regarding how much the insurance policy already has been drawn down, or at what point in time she expects that the funds may run out.

Additionally, Yates's proposed ancillary proceeding risks unfair prejudice to the Bank. Yates's claims sound in contract and thus depend upon the interpretation of Yates's contract with the Bank (*i.e.*, the Articles of Incorporation) under state law.[8] *Cf. Weissman*, 1997 WL 334966,

---

[7] The possible availability of offensive, nonmutual issue preclusion, however, may reduce any potential judicial efficiencies. *See* n.6, *supra*.

[8] Among other things, the Bank's Articles of Incorporation create contractual rights and obligations, including third-party beneficiary rights and obligations, between the Bank and its officers and directors. *See generally Dentel v. Fidelity Sav. & Loan Ass'n*, 273 Or. 31, 33 (1975) ("The bylaws of the corporation have been termed a contract between members of the corporation, and between the corporation and its members. . . . The articles of incorporation

at *9 (noting that the "resolution of the question central to this dispute, what constitutes a

'judgment or other final adjudication', does not turn solely on interpretation of state law," as the

phrase must be applied to a federal criminal proceeding). Yates's state law contract claims

against the Bank are governed by different procedural and substantive rules than the instant

criminal action. Thus, if the Court were to exercise ancillary jurisdiction, the Bank would be

drawn into a forum with a different procedural framework than a typical state court civil action.

Because "such a proceeding [would be] governed by no express statutory authority," the court

would have to apply "an *ad hoc* mix of the criminal and civil rules of procedure," a result the

Second Circuit expressly disapproved of in *Stein*. 486 F.3d at 761. Exercising ancillary

jurisdiction in the absence of clear procedural standards would risk confusion for all parties and

unfair prejudice to the Bank and would not necessarily "enable [the] court to function

successfully" and "manage its proceedings." *Kokkonen*, 511 U.S. at 380. Thus, the Court finds

that the need for the proposed ancillary proceeding and any efficiencies it might provide do not

outweigh the unfair prejudice to the Bank that may result from such a proceeding.[9]

The Court does not believe that it would be appropriate to exercise ancillary jurisdiction

over Yates's motion. Yates has not met her burden of establishing that her claims against the

Bank lie within the Court's limited jurisdiction.[10] *See id.* at 377.

---

constitute 'a contract between the corporation and the state, and between the corporation and its
owners, and between the owners themselves.'") (citation omitted).

[9] In light of the potential availability of offensive, nonmutual issue preclusion to Yates in
her claim against the Bank, however, any prejudice to the Bank may also likely be reduced. *See*
n.6, *supra*.

[10] Because the Court finds that it does not have ancillary jurisdiction over Yates's dispute
with the Bank, the Court does not reach the merits of Yates's additional argument that the
Bank's refusal to advance her legal expenses after the Court's decision in *Heine v. The Bank of
Oswego* amounts to bad faith. That issue, as well, may be presented to the state court.

## CONCLUSION

Yates's Motion to Compel the Bank of Oswego to Advance Legal Fees (Dkt. 46) is

DENIED.

**IT IS SO ORDERED**.

DATED this 4th day of January, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge